ELLIS, Judge.
This suit was instituted by Benjamin Taylor as the administrator of the estate of his minor child, Benjamin Taylor, Jr., against Interstate Life and Accident Insurance Company. The object of this suit is to collect the sum of $1,000.00, being the face amount of a certain industrial whole life non-participating insurance policy issued by the defendant on the life of Will Robinson. The policy was issued on January 23, 1961 and the insured died on December 8, 1961 at Charity Hospital in New Orleans. Plaintiff also claims statutory penalties and attorneys fees.
The trial court rendered judgment in favor of the defendant, rejecting plaintiff’s demands at his cost, and the plaintiff has appealed, alleging as error that the trial court erred in admitting into evidence, subject to objection, the application for life insurance, a certified copy of the death certificate of Will Robinson and the hospital records of Charity Hospital in New Orleans.
The immediate cause of death, as shown by the death certificate, was bronchopneu-monia with contributing factors listed as congestive heart failure and gastrointestinal bleeding.
Payment under the policy was initially refused by the defendant insurance company on the ground that in the application for the insurance signed by Will Robinson the applicant represented that he had no previous medical history and particularly no previous medical history of heart disease. In truth and in fact Will Robinson had been suffering for many years from a heart condition and had been taking digitalis. A motion was filed asking that the above defense, contained in the original answer to plaintiff’s petition, be stricken[1] on the ground that LSA-R.S. 22:618(A) [2] precluded the admission of the application for insurance unless such application or a corrected copy thereof was attached to or otherwise made a part of the policy. Unquestionably, the application was not so attached nor was it made a part of the policy by the language of the policy, so as to exclude it from the provisions of the law. The trial judge properly sustained the-motion to strike as to the defense raised in-said articles.
The defendant filed an amended answer-refusing payment, alleging that the policy provided that all liability thereunder would, be limited to a refund of the premium paid in a case where the insured had been a. patient for the treatment of any physical or mental disease not shown on the application^ This provision of the policy reads as follows :
"Liability Limited: Unless specifically recited on the application for this-Policy, if before the date hereof the Insured has been rejected for insurance-by this or any other company, or has-been a patient or an inmate of any institution for the treatment of physical' or mental disease, or injury, or has-undergone any surgical operation, or has been attended by a physician, unless it be shown by the claimant that such institutional, surgical or medical *251 attention was not for a serious condition, then the Company’s liability shall be limited to an amount equal to the premium paid hereon. The provisions and limitations of this paragraph are subject to the incontestability clause herein.”
The only witness heard upon the trial ■of the merits was Benjamin Taylor, plaintiff herein. He testified he was present at the time the agent for defendant insurance ■company filled out the application for Will Robinson. On direct examination Taylor was questioned with reference to the application and the questions asked by the agent and the answers given by Robinson, the deceased insured. For the purpose of emphasizing the scope of the direct examination of this witness upon the subject matter of the ■questions and answers given by the deceased insured as contained in the application, we take the liberty of quoting such testimony:
“Q Did the insurance agent take his application ?
“A Yes, ma’am.
“Q And did he ask him if he’d ever had a policy with that company before?
“A Yes, ma’am, he asked him and he told him that he didn’t.
“Q Did he ask him if he was in good health and free from physical impairment or deformity?
'“A Yes, ma’am, he asked him that and he told him that he was.
“Q Did he ask him if he had ever had an operation?
J,A Yes, ma’am, and he told him that he hadn’t.
“Q Had not?
■“A Had not had a operation.
■“Q Did he ask him if he’d ever been advised to have an operation?
“A Yes, ma’am, he asked him that, and he told him that he hadn’t.
“Q Did he ask him if he ever had T. B. or lived with anyone who hadT. B.?
“A Yes, ma’am, he asked him that, too, but he told him that l.e hadn’t.
“Q Did he ask him if he’d ever been rejected for insurance?
“A Yes, ma’am, he asked him, and he told him he hadn’t been rejected.
“Q Did he ask him if he had made a claim for any insurance or any indemnity in the past?
“A No, ma’am, he didn’t ask him that.
“Q Did he ask him if he’d been to a doctor in the last five years ?
“A Yes, ma’am he asked him had he been to a doctor in the last five years.
“Q And what did he say?
“A tie say he had been to a doctor but he didn’t say what doctor he had been to or what he went for.
“Q And did the insurance agent ask him that?
“A No, ma’am, he didn’t.
“Q Did Will Robinson make out the application himself?
“A Yes, ma’am.
“Q Will Robinson filled in all information on the application, or did he just sign it?
“A He just signed it. The insurance agent filled it in.
“Q Now who else was present besides you and Will Robinson and the insurance agent?
“A Bessie Taylor.
“Q That’s your wife?
“A Yes, ma’am.
“Q Was anyone else present?
“A No, ma’am, there wasn’t anyone else present at that time.
*252 “Q Now after that did he receive the policy ?
“A Yes, ma’am, two weeks after.
“Q Will you look at this and tell us if this is the policy he received ?
“A Yes, ma’am, this is the policy.
“Q At the time that the insurance agent was there was he asked any other questions about his health other than the ones I’ve given you?
“A No, ma’am, he didn’t.
“Q While the insurance agent was there did he ask him if he had ever had any ailment of rheumatism, neuritis, arthritis, and so on ?
“A Yes, ma’am, he asked him and he told him that he hadn’t had any.
“Q Did he ask him if he had ever had any diseases of the kidney or bladder, brain or heart, nervous system, gall bladder, and so on ?
“A Yes, ma’am, he asked him that and he told him he hadn’t.
“Q Had not?
“A Yes, ma’am, had not.”
After the specific interrogation by counsel for plaintiff as to the application and the answers contained therein, this witness was tendered for cross examination and he was interrogated by counsel for the defendant as to the application and to the effect that the questions which he had testified to as being on the application and the answers of the deceased were shown on the application. The witness also identified the application and testified that the deceased had answered the questions and that such answers on the application were correct as given by the deceased. Counsel for the defendant then offered the application in connection with the witness’ testimony and it was only at this time that counsel for the plaintiff made any objection. The court ruled as follows: “I’m going to admit it subject to the objection. I had originally ruled that it would not be admissible but I am not so sure about it now.”
It is well settled that the conclusiveness of evidence is on the party introducing it. It is equally well settled that testimony which would not otherwise be admissible under the pleadings will enlarge the issues when voluntarily placed in the record or by failure to object to the inadmissibility of the evidence when it is offered. In the present case plaintiff opened wide the door as to the application and its contents and the defendant had a right to cross examine this witness with regard to the application and to offer it in evidence under its defense of limited liability provision of the policy as above quoted.
We find no basis for excluding from the evidence a certified copy of the death certificate or the records of Charity Hospital. They were introduced and are clearly admissible for the purpose of proving the defense set up in the amended answer under the limited liability provision of the policy, supra.
These records show that the insured had suffered with a congestive heart ailment for many years, had been treated by doctors and hospitalized and had been administered digitalis for his heart condition over a number of years. None of this was divulged, and, in fact, contrary to the testimony of the father of the beneficiary placed on the stand by the plaintiff to the effect that the insured “had been to a doctor but didn’t say what doctor he had been to or what he went for” and that the insurance agent in filling out his application had not asked him what doctor he had been to or what he went for, the application specifically shows that the insured was asked to “give below all causes for which you have consulted a doctor in the last five years” and the answer written in the application, is “State (sic) none”. The plaintiff could only avoid as a bar to his claim the provisions of the limited liability clause by show *253 ing that the insured has specifically recited on the application for the policy that he “has been a patient or inmate of any institution for the treatment of physical or mental disease, or injury, * * * or has been attended by a physician,” or where such .is shown to have been true the plaintiff could still avoid limited liability clause in the policy if “ * * * it be shown by the claimant that such institutional, * * * or medical attention was not for a serious condition,”. Therefore, he failed to specifically recite the truth on his application for the policy with regard to his Charity Hospital record for the treatment of his heart condition or that he had been attended by a physician in the last five years and after this was proven there is no testimony that such institutional or medical attention was not for a serious condition. In fact, the record preponderates to the effect that it was for a most serious condition and that he had been confined in the institution and attended by physicians for his heart condition. For these reasons, the judgment of the lower court limiting defendant company’s liability to an amount equal to the premium paid was correct.
We have purposely not considered the defendant’s contention that the policy was issued entirely on the basis of representations contained in the insured’s application and which application contained many false and fraudulent misrepresentations made with intent to deceive respondent in that, among other things, respondent warranted and represented that he had never suffered low or high blood pressure, heart disease, or hospital confinements whereas, following his death, it was ascertained that such insured had suffered a chronic heart disease for many years for which he had been treated and had taken digitalis and had been confined to the hospital on a number of occasions, that had such facts been made known to the respondent, the said contract of insurance herein sued on would not have been issued, and that the facts fraudulently withheld in the application from respondent increased the risk and hazard which would not have been acceptable to respondent had such facts been known, for the reason that this defense was stricken and no amendment offered after the enlargement of the issues by the voluntary action of the plaintiff.
Judgment is accordingly affirmed.
Affirmed.

. “La.Code of Civil Procedure — Art. 964- Motion to strike. The court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter. The motion of a party shall be filed within ten days after service of the pleading upon mover, except that a defendant may move to strike any matter from the petition at any time within fifteen days of the service.”

. “No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless-a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and' delivered. This provision shall not apply to policies or contracts of industrial insurance subject to B..S. 22:213A. (1) and 22:239(2).”